# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **MARTINEZ GIBSON** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **V.** | ) | **Civil Action** |
| | ) | |
| **FULTON COUNTY, GEORGIA;** | ) | **File No.** |
| **SHERIFF PATRICK LABAT IN** | ) | |
| **HIS OFFICIAL CAPACITY AND** | ) | |
| **INDIVIDUAL CAPACITY** | ) | |
| **JOHN/JANE DOES 1-10,** | ) | |
| | ) | |
| **DEFENDANTS** | ) | |
| ▬▬▬▬▬▬▬▬▬▬▬▬▬ | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, MARTINEZ GIBSON ("Plaintiff") and hereby brings this civil action for damages against the above-named defendants, seeking to redress the harm caused to him by the acts and omissions of the Defendants while he was incarcerated as an inmate at the Fulton County Jail in Atlanta Georgia in August 11/12, 2023. In support thereof, Plaintiff alleges the following:  That he was viciously attacked by multiple inmates and was stabbed in his side rupturing/puncturing his lung, at which point he

had to be rushed to Grady Hospital for treatment. Inmate Allen Arnold was

identified as one of the inmates that had stabbed him.

## **PARTIES**

1.    Mr. Martinez Gibson is an individual and resident of the State of

Georgia. At the time of the filing of this lawsuit, Mr. Gibson is still incarcerated.

2.    Defendant Fulton County, Georgia ("Fulton County") is a legal entity

capable of suing and being sued. Fulton County owns Fulton County

Jail and is responsible for providing funding for the necessary upkeep and

maintenance of the jail. Service of Process on Fulton County may be perfected

on it at Fulton County Government Center, Assembly Hall, 141 Pryor Street,

NW, Atlanta, GA 30303.

3.    Defendant Patrick Labat ("Labat"), FCSO Sheriff, being sued in his

individual capacity because he was the Sheriff and Chief decision policy and

decision maker for the jail when the incidents in question took place. As such

Sheriff Labat was responsible for the hiring, screening, training, supervising

and overseeing employees of the jail at the time of the Plaintiffs injuries, to

include the other defendants named herein. Service of Process on Labat maybe

be perfected on him at The Fulton County Sheriff's Office, located at 185

Central Avenue, Atlanta GA 30303.

4.     Together, Labat, and possibly unknown individuals currently identified by the moniker :John/Jane Does 1-10" who are or were FCSO employees and who are responsible (in whole or in part) for the incidents in question make up the "FCSO Defendants."

5.     Each of the FCSO Defendants failed to take reasonable steps to protect and prevent the attack on the Plaintiff as stated herein.

6.     Defendants, unknown individuals currently identified by the moniker "John/Jane Does 1-10" are liable for their malicious and reckless indifference to Plaintiff's welfare by subjecting him to a known and unreasonable risk of harm at the hands of other inmates at the jail and by failing to render aid to him while he was being attacked and savagely beaten.

7.     Defendants John Does 1-10 are/were Fulton County or FCSO employees acting within the course and scope of their employment with the Fulton County Sheriff's Department  at all times is relevant to this complaint. Plaintiff has reason to believe, and herein alleges that these unknown and unnamed Defendants are also legally responsible and liable for the incidents, injuries and damages hereinafter set forth, and that each of these Defendants proximately caused injuries and damages by reason of negligence, carelessness and deliberate indifference or wanton misconduct, and circumstances hereinafter set fourth.

8.    Defendants Jane Does 1-10 are/were Fulton County or FCSO employees acting within the course and scope of their employment with the Fulton County Sheriff's Department  at all times is relevant to this complaint. Plaintiff has reason to believe, and herein alleges that these unknown and unnamed Defendants are also legally responsible and liable for the incidents, injuries and damages hereinafter set forth, and that each of these Defendants proximately caused injuries and damages by reason of negligence, carelessness and deliberate indifference or wanton misconduct, and circumstances hereinafter set fourth.

9.    Defendants Johns Does will be substituted and brought into this lawsuit in their individual capacities and served with process once their identities are revealed through litigation.

10.    Defendants Jane Does will be substituted and brought into this lawsuit in their individual capacities and served with process once their identities are revealed through litigation.

## JURISDICTION AND VENUE

11.    All defendants are subject to personal jurisdiction of this Court. Venue is proper in this court because one or more Defendants are Domiciled in or residents of Fulton County. O.C.G.A. 9-10-31(b).

12.    In November of 2020 Sheriff Patrick Labat was elected Sheriff and re-

elected May of 2024.

**PRIOR VIOLENT INCIDENTS PERPETRATED BY THE PLAINTIFFS'
ASSAILANTS AND CONDITIONS IN THE FULTON COUNTY JAIL**

13.   Prior to Plaintiffs attack by other inmates in August 2023, the Fulton

County Jail has been previously under Federal Monitoring

because of the violence and inhumane conditions that exist in the entire

jail, violate the Constitution and other Federal Laws. This investigation

commenced in July of 2023, no sooner had the federal government began

investigation into the unsafe, unsanitary, and inhumane conditions of the jail,

Plaintiff was viciously attacked and stabbed.

14.   Plaintiff was booked into the Fulton County Jail on various charges.

On or about August 11, 2023, multiple inmates viciously attacked him.

15.   Plaintiff was taken to Grady Hospital, Plaintiff suffered the following

Injuries, a punctured lung, after being viciously attacked, stabbed about the body

puncturing his lung.

16.      Plaintiff required immediate medical attention and has continued

seek and obtain medical treatment for the injuries sustained August 12, 2023. He

sustained injuries to his upper body and these injuries were

crippling. Which have left him disabled, diminishing his earning capacity.

17.   The unrestrained reign of terror by these inmates did not stop with the

Plaintiff.

18.    Due to the dilapidated conditions of the cell doors/locks, inmates do not enjoy any sense of protection or safety from other inmates, such as the assailants in this case, with well-known and well-documented histories of violence and aggression.

19.    As shown above, there was not adequate segregation of non-violent inmates from violent inmates, pre-trial detainees from convicted criminals, or inmates with mental disorders from those without mental disorders.

20.    There were insufficient head counts of prisoners to ensure everyone was accounted for, and the cells were not adequately inspected to remove contraband and weapons.

21.    Locks on cell doors were not functional, allowing inmates to roam freely at all hours of the day and night.

22.    As evidenced by this case and several other inmate-on-inmate attacks, Immediately preceding it, homemade weapons were readily available to inmates, and there was no lockdown of prisoners in their cells at any point during the day or night.

23.    Prisoners were not disciplined or segregated when they threatened jailers or threatened or assaulted other inmates.

24.    Despite all the prior inmate-on-inmates attacks by Plaintiff's

assailants, Defendants did not have a heightened number of security present in the housing unit where the assault took place.

25.    All Defendants were acting within the scope of their employment as state actors under the color of law during all events described in this complaint.

26.    All Defendants were responsible for keeping inmates safe through monitoring the housing of inmates.

27.    All Defendants had the responsibility to know the classifications systems and or placement policy, procedures, and guidelines for separating and housing of Fulton County Jails Inmates.

28.    A copy of the classifications system and or placement policy, procedures and guidelines for quartering of Fulton County Jails inmates was accessible to each of these Defendants.

29.    Each Defendant knew or should have known the classification system and or placement policy, procedures, and guidelines for quartering of Fulton County Jails inmates.

## CONDITIONS AT THE FULTON COUNTY JAIL

30.    Numerous news articles predating the above incidents reports complaints by current or former employees, inmates, and family members of inmates of the dangerous and deplorable conditions, gang activity, extortion, violence and inoperable cell locks at the jail which have existed since long before

Plaintiff's August 2023 attack.

31.   The deplorable and inhumane treatment of inmates creates, emboldens, and fosters conditions ripe for inmate-on-inmates' violence, especially when inmates may extort others for much needed clothing, toiletries, use of functional toilets, or bed spaces.

32.   Detainee's underwear is confiscated when they arrive, and they are forced to either defend themselves or have their personal items taken by force by other inmates.

33.   Through the issue of dysfunctional/inoperable locks and cell doors been an issue at the Fulton County Jail for many months (as evidenced by the above incidents), these issues had not been addressed by the time of the Plaintiff's attack and persist today.

34.   Defendants knew this was a problem at the time of Plaintiffs attack yet allowed him to be placed and remain in an area that was subject to inmate on inmate's attacks, without the protection of a secure cell or proper allocation of manpower, that would have alleviated the presence of weapons, had adequate shakedowns of housing units.

35.   The issue of cells not being able to properly lock, due to poor maintenance, dilapidated, antiquated and damage caused by inmates, was an existence when the Plaintiff was injured.

36.    The above-described problems have been well documented and continue to plague the Fulton County Jail.

37.    For a long time prior to the vicious assault on the Plaintiff to The present, the security conditions at the jail have not materially changed. Through 2022 through 2023, then Sheriff Labat was aware of the security concerns posed by the failure to secure cell doors at the jail. The jail staff has continually expressed problems with the unsecured cell doors as well as general mismanagement and failure to execute policies that would provide for a safer and more secure environment for inmates and jail employees.

38.    All these factors contributed to the dangerous security environment that Plaintiff was confronted with during his incarceration in August 2023.

39.    The same manner of deliberate indifference existed long before Plaintiff was attacked in August 2023. This custom and policy of indifference exhibited by each of the Defendants in this case caused or contributed to the violation of Plaintiffs' constitutional rights.

## LIABILITY

## COUNT I: 42 U.S.C. 1983 CLAIM FOR VIOLATING THE PLAINTIFF'S RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT
(As to all Defendants)

40.    Plaintiff re-alleges the foregoing as if fully set forth herein.

41.    Defendants violated Plaintiff's clearly established rights under the

Eight and Fourteenth Amendments to the U.S. Constitution and Art. I, Sec.

I, Para. XVII of the Georgia Constitution by causing, allowing and/or

enabling Plaintiff to be maliciously, inhumanely, and brutally attacked.

42.   "[T]he law is well established that pre-trial detainees may bring 1983

actions to redress violations of their rights under the Due Process Clause of the

Fourteenth Amendment, which 'protects a pretrial detainee from the use of

excessive force that amounts to punishment. "Vineyard v. County of Murray,

990 F.2d 1207, 1211 (11th Cir. 1993). The same protections apply to a pretrial

detainee's right to be free from cruel and unusual punishment.

43.    The County, by repeatedly failing to provide its policymaker and agent

sufficient funds and resources or by failing to take the necessary measures on its

own, showed deliberate indifference when it failed to take the necessary

measures on its own, showed deliberate indifference when it failed to fix the

known deficiencies that existed at the jail, including, but not limited too failing

to fix the cell doors/locks, and failing to fund additional security measures,

including additional personnel. The evidence will show that the Defendants

were aware of these issues well in advance of the Plaintiff's injuries, However,

the FCSO Defendants repeatedly failed to address these concerns and the

County failed to sufficiently fund the repairs and staff necessary to keep the

inmates secure, sending a clear message of indifference to its policy makers/agent who was responsible for the care of the Fulton County inmates (at the time Sheriff Labat).

44.   Considering the number of prior violent attacks by these inmates a jail, which is not limited to those named herein, serious inmate on violence was permitted, accepted, and in some instances, facilitated and condoned. This was no isolated attack. The extensive history of inmate-on-inmate attacks, Extortion, specifically as to assailants involved in this case, provides evidence that Defendants fostered an environment of extreme and pervasive violence.

45.   Consequently, Plaintiff is entitled to all permissible damages, including punitive damages to deter future Eight and Fourteenth Amendment violations at this institution.

**COUNT II:  42 U.S.C. 1983 CLAIM FOR DELIBERATE INDIFFERENCE, FAILURE TO PROTECT, AND FAILURE TO INTERVENE TO PREVENT CIVIL RIGHTS VIOLATIONS.**
(AS TO All FCSOP Defendants and John/Jane Does 1-10)

46.   Plaintiff re-alleges the foregoing as if fully set forth herein.

47.   The Eighth and Fourteenth Amendment to the United States Constitution , **42 USC 1983**, Art. I, Sec./ I, Para. XVII of the Georgia Constitution Imposes a clearly defined duty on prison /jail officials to "Protect prisoners from violence at the hand of other prisoners.

48.   When considering the claims of pre-trial detainees, liability can at

when a "prison officials deliberate indifference to a known, substantial risk of

harm violates the [Fourteenth Amendment."  Keith v. Dekalb County., Ga., **749

F.3d 1034, 1047** (11th Cir. 2014). A showing of deliberate indifference requires a

"(1) subjective knowledge of the risk of serious harm; (2) disregard of that risk; (3)

by conduct that is more than gross negligence.

49.   Plaintiff sues under Sec. 1983, the Eighth and Fourteenth Amendment

the United States Constitution, and Art. I, Sec. I, Para. XV!! Of the Georgia

Constitution for the Defendants indefensible failure to protect Plaintiff from the

brutal attack made upon him and for negligently, recklessly, or maliciously

subjecting him to the same. Defendants were at the very least, deliberately

indifferent to Plaintiff's safety.

50.   It is clearly established that prison officials deliberate to a known

substantial risk of serious harm to an inmate violates the Eight or the Fourteenth

Amendment.

51.   It is also clearly established that prison officials violate inmates

Constitutional rights when they take no measures to protect an inmate from attack

by another inmate when those other inmates have histories of violence and

threatening altercations with other inmates. Officials are liable for the abuse of

inmates when the official knows of and disregards an excessive risk to inmate health or safety.

52.    "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, but confinement in a prison where violence and terror reign is actionable, "Bugge v. Roberts, 430 F. App'x 753, 757 (11th Cir. 2011), quoting Purcell v. Toombs Cnty., 400 F.3d 1313, 1320 (11th Cir. 2005) (quotation marks and alterations omitted).

53.    The above-mentioned conditions and acts by the assailants in this case we're not occasional or isolated, but a continued pattern of conduct, that the FCSO enabled by allowing these acts of violence to continue against another innocent inmates.

54.    Defendants were aware that the other inmates/assailants in the housing unit were either accused or convicted of violent felonies with histories of prior inmate-on-inmate abuse and that Plaintiff was being threatened with violence.

55.    Defendants were aware of a serious risk of harm to the Plaintiff, yet they were deliberately indifferent to this risk and failed to take reasonable and available measures to protect the Plaintiff, such as simply keeping him non-violent housing unit, placing him in isolation or simply ensuring he was in a

locked cell. Any of these options and a host of others would have prevented this incident from occurring.

56.    Each Defendant had sufficient time and opportunity to intervene and and prevent Plaintiff injuries.

57.    Defendants' failure to take reasonable action to protect Plaintiff from and not subject him to known risks of serious harm amounted to deliberate indifference to his safety in violation of the Eighth and Fourteenth Amendments.

58.    Defendant's actions and omissions proximately caused Plaintiff injuries, pain, suffering, and loss of income.

## COUNT III: <u>42 U.S.C. § 1983</u> CLAIM FOR FULTON COUNTY'S POLICY OR CUSTOM OF FAILING TO REPAIR, UNDER-STAFFING, AND MISMANAGING FULTON COUNTY JAIL
### <u>(As to Fulton County)</u>

59.    Plaintiff re-alleges the foregoing as if fully set forth herein.

60.    "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Dept. of Social Services*, <u>436 U.S. 658, 694</u> (1978).

61.    The County and FCSO have created a dangerous, degrading, and inhumane environment for incarcerated individuals by failing to address known security concerns, such as defunct lock and cell doors which are incapable of being secured and insufficient staffing, ill-trained officers.

62.    The failure to cure these issues has become a policy or custom of the County and the FCSO, Patrick Labat, as the Sheriff and Chief deputy was the county's agent and policymaker for operation and maintenance of the jail and the care of its inmates.

63.    The County's refusal to fund the necessary repairs and additional officers, in addition to the Sheriff's failure to implement policies which mitigate damage or otherwise render the jail safe for inmates set the bar exceptionally low for the officers under their control and leadership. While officers have a legal obligation to tend to the safety of inmates under their supervision, the policy and customs set by the County and FCSO have established a mindset of indifference demonstrated by the widespread practice of ignoring the lack of safe conditions at the jail.

64.    "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with **establishing conditions of confinement**, supplying medical needs, or

**restoring official control over a tumultuous cellblock** " *Whitley v. Albers*, 475 U.S. 312, 319 ( 106 S. Ct. 1078, 89 L.E.2d 251) (1986) (emphasis added); See *Howard v. City of Columbus*, 239 Ga. App. 399, 402 (Ga. Ct. App. 1999).

65.  "Counties may be liable under 42 U.S.C. § 1983 for deprivations of constitutional rights when the county has an official policy that was the moving force of the constitutional violation." *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993).

66.  [A] single constitutional violation may result in municipal liability when there is "sufficient independent proof that the moving force of the violation was a municipal policy or custom."" *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 n. 10 (11th Cir. 1985), cert. denied, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654, and

476 S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986). 477

67.  In this case, there have been far more than this single incident to demonstrate the Defendants' failures in this case. (See Exhibit 2).

68.  The County and FCSO Defendants knew of the security problems at the jail caused by the unsecured doors of the cells, the overcrowding, and understaffing, of the jail by reporting from jail staff (see Exhibits 10-13) and public outcry regarding the conditions.

69. The County and FCSO Defendants were capable of addressing the security concerns at the jail but failed or refused to take adequate measures to do so.

**COUNT IV: SUPERVISORY LIABILITY FOR FAILURE TO IMPLEMENT, TRAIN, SUPERVISE, AND ENFORCE POLICIES TO PREVENT INMATE- ON-INMATE VIOLENCE**
(As to Labat, and John Does 1-10, Jane Does 1-10)

70. Plaintiff re-alleges the foregoing as if fully set forth herein.

71. "Only where a municipality's failure to train its employees in a relevant respect evidences a `deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city `policy or custom' that is actionable under § 1983." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989).

72. Correction officers and prison officials are improperly and inadequately trained, and they are also severely mismanaged.

73. These leadership failures exist through the hiring process, training, supervision, and discipline of officers.

74. Uniformed staff are under-supervised and are rarely held accountable for wrongdoing

75. Uniformed staff stand by and merely observe the chaos, either out of sheer fear of intervening or callousness toward the inmates.

76.    The classification system—a method by which the facilities separate detainees with prior violent histories with one another or who are affiliated with rival gangs— is in disarray and or has all but disappeared. Staff and guards are ignoring affiliations, placing people who have been ordered separate into the same dorms or even the same cells, leading to violent outbursts and serious injuries to inmates and guards alike.

77.    The high rate of staff absenteeism is exacerbating these long-standing problems. In some spaces, there are no guards to be found, leaving inmates vulnerable to attacks, unable to call for help, and isolated.

78.    Some guards are not just providing inmates permission but are actively involved in providing weapons and are instigating violence and further contributing to disorder. Officers have ceased confiscating weapons altogether, despite multiple stabbings and deaths.

79.    FCSO persistently fails to train employed officers on how to keep incarcerated individuals safe and ensure that inmates receive the care and services to which inmates are constitutionally entitled. These failures caused and/or contributed to Plaintiff's injuries and damage.

80.  The FCSO Defendants knew of the other inmates'/assailants' prior violence towards and extortion of other inmates at the jail.

81.   The FCSO Defendants unnecessarily and recklessly relocated Plaintiff from a housing unit where he had been safe to the housing unit knowing and intending that he would be in danger.

82.   Defendants, by and through their acts and omissions, have failed to implement meaningful accountability measures and have failed to conduct thorough investigations into inmate-on-inmate acts of violence and the failure of staff to intervene or prevent these incidents by way of segregating and supervising violent offenders, especially repeat offenders like those involved here.

83.   Defendant Labat did nothing to investigate the officers under his command or determine why Plaintiff had been moved and allowed to remain in such a dangerous housing unit in the first place.

84.   Despite the numerous prior inmate-on-inmate instances by Plaintiff's assailants, there was no investigation into the circumstances that permitted these inmates to continue attacking and extorting other inmates and no action was taken, nor policy enforced to prevent them from continuing their attacks on other inmates.

85.   No justifiable explanation exists for why Plaintiff was not returned to a safer housing unit, removed from a safer housing unit, or isolated

following the report by him and his family of their concern for his safety if he remained in such a dangerous housing unit.

86.     Following the attack on Plaintiff, no one isolated the assailants or searched them or their cells for shanks, knives, or other weapons, despite Plaintiff's report that they possessed weapons inside of the housing unit.

87.     Supervisory liability under **42 U.S.C. § 1983** occurs when supervisors personally participate in the alleged constitutional violation or when there is a causal connection between the actions of the supervising officials and the alleged constitutional deprivation.

88.     In this case, John Does/Jane Does 1-10 personally participated in the cruel and unusual punishment of Plaintiff, a pre-trial detainee, by having him moved into a dangerous housing unit.

89.     The supervisor Defendants ratified the acts, omissions, and cruel and unusual punishment inflicted on the Plaintiff by the other Defendants by failing to take reasonable steps to immediately intervene to remedy the unconstitutional conditions that led to the Plaintiff being placed in jeopardy of being seriously injured.

90.     The supervisor Defendants failed to take any action to intervene, deter, respond to, protect, and prevent inmates from committing violence against other prisoners.

91.   The supervisor Defendants fostered an unreasonable environment of violence, an environment which motivated and encouraged inmates to commit violence against each other, and which resulted in Plaintiff's injuries.

92.   The Defendants knew that the compromised jail locks and understaffing created an "emergency" situation in August 2023 and in the months leading up to August 2023.

93.   Due to the "emergency" security situation created by the compromised jail locks and understaffing, it was incumbent upon jail leadership to implement policies and procedures which would mitigate the danger posed to inmates in their care, to diligently train jail staff on such policies and procedures, and to closely supervise and monitor jail staff to ensure that those policies were being followed.

94.   The Fulton County Jail employs a two-step classification process for new inmates. First, a healthcare provider either clears the inmate for placement in the general population or recommends another option, such the medical infirmary or the mental health infirmary. If the healthcare provider clears the inmate for placement in the general population, a corrections officer then determines whether the inmate should be placed at

the minimum, medium, or maximum-security housing. *Grochowskiv.*

*Clayton Cnty.*, **961 F.3d 1311, 1314** (11th Cir. 2020).

95.    Plaintiff should never have been placed in maximum security housing

and these Defendants failed to enforce any policy which would have

prevented his placement there.

96.    Additionally, staff should have been trained to frequently check on

inmates under their supervision. Inmates with histories of using violence

against other inmates should have been kept separate from non-violent

ones. Staff should have been diligent to monitor and surveil inmates in

their housing units. They should have been trained and prepared to address

inmate on inmate violence immediately, especially in housing unit where

Plaintiff was housed, where there were so many other offenders with a

history of violence and extortion towards other inmates.

97.    The Labat, along with other John/Jane Doe Defendants, would have

been responsible for creating and implementing these new policies and

procedures. However, they either did not have, did not implement, or did

not train, or did not supervise and enforce such policies and procedures.

98.    Labat, and John/Jane Does 1-10, knew that it was substantially certain

that the failure to implement necessary policies and procedures related to

inmate security, and/or to train, supervise, and enforce them, would result

in more inmates being assaulted, beaten, and killed. Despite this, it appears that they did nothing, as evidenced by this very incident following another attack that occurred on August 2023, attack on another inmate, Martinez Gibson, in this very same Housing Unit. This failure amounts to deliberate indifference under the U.S. Constitution and the Georgia Constitution and subjects these defendants to liability under **42 U.S.C. § 1983.**

99.    These supervisory Defendants personally participated in the decision to house Plaintiff with his assailants in maximum-security housing, despite the knowledge of the dangers they posed, and the minimum security enforced therein.

100.    As a direct and proximate result of these Defendants' failure to implement policies and procedures for the protection of inmates in their custody, and/or their failure to train, supervise, and enforce the same, Plaintiff suffered harm which was clearly and easily preventable.

### COUNT V: DEFENDANTS NEGLIGENT PERFORMANCE OF MINISTERIAL DUTIES
(As to All FCSO Defendants and John/Jane Does 1-10)

101.    Plaintiff re-alleges the foregoing as if fully set forth herein.

102.    The FCSO incident report will indicate that there was at least one guard  on duty in the housing unit, when the assault on Plaintiff began.

The officers' decision to do nothing amounts to deliberate indifference under the U.S. Constitution and the Georgia Constitution and subjects these defendants to liability under (inter alia) **42 U.S.C. § 1983.**

103.    Furthermore, "[l]iability under the eighth amendment may be established when prison officials refuse to investigate or help a prisoner when he cries for help." *Davis v. Pringle*, 642 F. Supp. 171, 178 (N.D. Ga. 1986).

104.    It has been held, "in the context of detention officers, that the acts of following established policies of inspecting and monitoring detainees are ministerial tasks."" *Lundy v. Hancock Cnty*., 368 Ga. App. 772, 779 (Ga. Ct. App. 2023).

105.    Here, Defendants failed to immediately respond when Plaintiff reported his fear of being attacked by the other inmates in Housing Unit and again when they observed him while being attacked for at least fifteen minutes prior to intervening.

106.    "[T]o hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. Dekalb Cnty*., **749 F.3d 1034, 1047-48** (11th Cir. 2014).

107.    Here, the jail supervisor's liability for failure by the on-duty officer to monitor and intervene prior to Plaintiff's injuries can be proven by the numerous prior instances in which inmates had been assaulted by these same inmates.

108.    There was a policy or procedure at the Fulton County jail requiring more than one officer on duty in maximum security housing units.

109.    There was a policy or procedure at the Fulton County jail which required the immediate response and intervention of officers whenever an inmate was being attacked or in danger of receiving a life-threatening injury.

110.    There was a policy or procedure at the Fulton County jail which required officers to search for and remove contraband which included weapons, shanks, or knives from housing units, cells, etc.

111.    There was a policy or procedure at the Fulton County jail which forbade the mixing of low or medium security inmates with maximum security inmates.

112.    Defendants' negligent performance of the above-stated ministerial tasks subjected Plaintiff to an unreasonable risk of harm amounting to deliberate indifference.

113.    The negligence of the Defendants caused or contributed to Plaintiff's injuries.

114.    Officers are not entitled to official immunity for breach of clear and simple duties of inspecting cells according to a prescribed policy. *Clark v. Prison Health Svcs.*, 257 Ga. App. 787, 794 (4) (c), 572 S.E.2d 342 (2002).

## DEFENDANTS DO NOT ENJOY
## SOVEREIGN OR OFFICIAL IMMUNITY

115.    Like the defendants in *Parker v. Williams*, 855 F.2d 763, 771 (11th Cir. 1988), the County does not enjoy State immunity.

117    "It is the duty of the county governing authorities to erect or repair, when necessary, their respective courthouses and jails and all other necessary county buildings and to furnish each with all the furniture necessary for the different rooms, offices, or cells." **O.C.G.A. § 36-9-5.**

118.    "The county jails hereafter constructed shall be of sufficient size and strength to contain and ***keep securely*** the prisoners who may be confined therein and shall contain at least two apartments, one for males and one for females, which are properly ventilated ***so as to secure the health of those confined therein***." **O.C.G.A.§ 36-9-9** (emphasis added).

119    "The public grounds and other county property are placed in the keeping of the sheriff of the county, ***subject to the order of the county governing authority***" **O.C.G.A. § 36-9-8** (emphasis added).

120. The County, with its power to tax, collect fines, fees, and bond forfeited bonds, must appropriate funds for the jail's construction, maintenance, repair, and staffing. Constitution of Georgia Art. III, § IX, ¶ VI; **O.C.G.A. § 15-21-91**, et. seq.

121  Georgia statute relegates legal custody and charge of the county jail and inmates therein to the county sheriff. **O.C.G.A. § 42-4-4.**

122. The FCSO Defendants had a special relationship with Plaintiff as his caretakers. **O.C.G.A. § 42-4-4**; *Lundy v. Hancock Cnty*., **368 Ga. App. 772, 780** (Ga. Ct. App. 2023) ("the officers had a special relationship with Walker as his caretaker").

123  "[T]he Constitution of Georgia refers to sheriffs as "County officers," [Ga. Const. Art. IX, § I, ¶ III] sheriffs are elected by the voters of their counties… and sheriffs largely exercise their authority within their counties, see id." *Lake v. Skelton*, **840 F.3d 1334, 1338** (11th Cir. 2016).

124  State statute requires that "[n]ew inmates should be carefully classified, with adequate separation and treatment given as needed." **O.C.G.A. § 42-4-32**.

125  "[I]t shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate." **O.C.G.A.§ 42-5-2.**

126.    The Sheriff has adopted a policy and procedure manual for the County jail which provides detailed guidelines for daily jail operations and screening, hiring, training, supervising, and terminating jail officers.

127.    "By virtue of their offices, sheriffs are jailers of the counties and have the authority to appoint other jailers, subject to the supervision of the county governing authority, as prescribed by law." **O.C.G.A. § 42-4-1** (emphasis added).

128.    In practice, Georgia counties and their sheriffs maintain their county jails in partnership. The county in essence provides the facility and the money for upkeep; the sheriff in essence manages the institution.

129.    In this regard, the sheriff makes all hiring and firing decisions in connection with the county jail.

130.    Accordingly, with (1) the purse strings for maintenance of the county jail being controlled by the County, (2) the County being Constitutionally and statutorily responsible for funding the maintenance, repair, and staffing of the jail, (3) the Sheriff having responsibility for the keeping of the jail and inmates held therein, and

131.    The sheriff as jailer being subject to the supervision of the county governing authority, it is clear that Labat was the policymaker for the upkeep of the jail and the care and maintenance of its inmates at the time of the alleged incidents. **O.C.G.A. § 36-9-8;** Constitution of Georgia Art. III, § IX, ¶ VI; O.C.G.A. § 15-21-91, et. seq.; O.C.G.A. § 36-9-5; O.C.G.A. § 42-4-1.

132.    Being in control of the funds for the jail, the County was able to permit, deny, or, at a minimum, significantly impact the Boehrer's ability to effectively carry out his statutory duties.

133.    At the time of Plaintiff's injuries, Labat operated the county jail on behalf of Fulton County, not in his own or in the state's stead. *Parker v. Williams*, 855 **F.2d 763, 771** (11th Cir. 1988).

134.    The Defendants were deliberately indifferent to the safety of inmates by failing to provide funding for staffing and replacement/repair locks at the Fulton County Jail, despite knowledge of the ongoing extortion of inmates by other dangerous and violent inmates at the jail. Indeed, the type of attacks as that involved in this case was made possible by the County Defendants' deliberate indifference to this very real danger.

135.    The Defendants most certainly knew of the danger to other non-violent inmates like Plaintiff by placing them in Plaintiffs particular housing unit based on the number of prior inmate attacks by the same inmate assailants at issue in this case. "It is enough that violence and sexual assaults occur... with sufficient frequency that… prisoners… are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures…. It is not necessary to show that all prisoners suffer a pervasive risk of harm. It is enough that an identifiable group of prisoners do, if the complainant is a member of that group." *Davis v. Pringle*, **642 F. Supp. 171, 177** (N.D. Ga. 1986) (citing *Withers v. Levine*, **615 F.2d 158, 161** (4th Cir.), cert. denied, **449 U.S. 849**, **101 S. Ct. 136**, **66 L.Ed.2d 59** (1980)).

136.    The decision to allow Plaintiff to remain in this housing was due to the willful, wonton, and reckless indifference to his well-being by the FCSO Defendants.

137.    "The necessary causal connection can be established when *a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so*. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts

support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id*. (emphasis added).

138. Even if certain Defendants did not personally observe the attack, they certainly, knew of the widespread inmate violence that existed in the jail in August 2023, and specifically, related to the assailants in this case, in addition to the lack of locking cell doors, and understaffing.

139. Labat, and John/Jane Does 1-10 remain liable for the decision to cause or allow Plaintiff to be placed in the housing unit with other inmates with a history of violence and extortion, by failing to ensure adequate security and supervision thereof, failing to remove Plaintiff when his legitimate fear of injury was made known to them, and by failing to train their subordinate correctional officers to supervise, monitor, and intervene/act to prevent inmate on inmate violence.

140. The numerous instances listed above establish that these supervisors were actual or constructive notice of the deficient training of their officers and their decision to correct this deficiency amounted to deliberate and callous indifference given the known risk of harm based on prior attacks. See *Keith v. Dekalb Cnty*., __749__ **F.3d 1034, 1053** (11th Cir. 2014).

141.    The Defendants violated a known ministerial duty to Plaintiff by failing to provide for his safety and by needlessly, willfully, and

maliciously subjecting him to the attack at issue. *Davis v. Pringle*, **642 F. Supp. 171, 179** (N.D. Ga. 1986). ("Whether they are considered officers or mere employees, [defendant guards] were discharging ministerial duties in their guarding and protecting inmates."); *See Winston v. City of Austell,* **123 Ga. App. 183, 184,** **179 S.E.2d 665** (1971); *Thomas v. Williams***, 105 Ga. App. 321, 326, 124 S.E.2d 409** (1962)

142.    Not only did the Defendants negligently perform ministerial tasks, any tasks which could be said to be discretionary were performed with malice, wantonness, and deliberate indifference. Therefore, these Defendants do not enjoy the protection of official immunity.

## DAMAGES

143.    Plaintiff incorporates the foregoing Paragraphs of this Complaint as if fully set forth and restated herein.

144.    As a direct and proximate result of Defendants' individual and collective conduct, Plaintiff has suffered economic and noneconomic harm and is entitled to recover all available compensatory damage permitted by law.

145.    As a direct and proximate result of Defendants' individual and collective conduct, Plaintiff is entitled to recover from Defendants' reasonable compensatory damages in an amount in excess of $10,000.00

to be determined by a fair and impartial jury for all damages Plaintiff suffered, including physical, emotional, and economic injuries.

## PUNITIVE DAMAGES
## ATTORNEY'S FEES AND COSTS

146.    To the extent that a fair and impartial jury finds that some or all of the Defendants' actions evidence bad faith or stubborn litigiousness, or that they put Plaintiff through unnecessary trouble and expense, then Plaintiff would be entitled to recover his necessary expenses of litigation, including an award of reasonable attorney's fees and expenses required by this Action, pursuant to **O.C.G.A. § 13-6-11**, as well as any other applicable statutory or common law basis.

147.    Further, Plaintiff may be able to recover his reasonable attorneys' fees and costs pursuant to **42 USC § 1988** if a jury finds that his Federal constitutional rights were violated.

## DEMAND FOR JURY TRIAL

148.    Plaintiff hereby demands a trial by jury as to all issues so triable.

**WHEREFORE, Plaintiff demands a trial by jury and judgment against Defendants as follows:**

a.    Compensatory damages in an amount in excess of $10,000.00 to be determined by a fair and impartial jury.

b.      All costs and litigation expenses of this action;

c.      Reasonable attorneys' fees;

d.

e.      Punitive damages up to $250,000.00;

e.      Uncapped punitive damages in excess of $250,000.00;

f       Nominal damages; and

g      Such other and further relief as the Court deems just and proper

This 11th day of August 2025.

Respectfully submitted,

*/S/ Alan G. Parker*

**ALAN PARKER LAW FIRM LLC**
226 N. McDonough Street
Suite A-B
Jonesboro GA 30236
404-825-7899 Office
404-393-4684 fax
Parkerlaw1983@gmail.com
Georgia Bar No. 286164